# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Abdul Jabbar,                                                Civil No. 12-2460 PAM/AJB

                  Plaintiff,

v.                                                           **REPORT AND RECOMMENDATION**

Contingency Work Force Solutions, Inc., et al.,

                  Defendants.

      This matter is before the court, United States Chief Magistrate Judge Arthur J. Boylan, for Report and Recommendation on defendants' Motion for Judgment on the Pleadings or Summary Judgment [Docket No. 19]. Plaintiff filed a pro se complaint under 42 U.S.C. § 1983 for violation of civil rights and rights under the Religious Land Use and Institutionalized Persons Act of 2000 ("RLUIPA"), 42 U.S.C. § 2000cc-1. Plaintiff Abdul Jabbar is a Minnesota state prisoner incarcerated at the Minnesota Correctional Facility at Stillwater, Minnesota. Defendant Contingency Work Force Solutions, Inc. ("CWF") is a private company that contracts with the Minnesota Department of Corrections ("DOC") to provide food services at the MCF–Stillwater. Individual named defendants[1] are officers and employees of CWF. The complaint alleges improper actions by CWF and named CWF employees with respect to dietary accommodations for prisoners of Islamic faith. Defendants move for judgment dismissing the action on grounds that the plaintiff has not exhausted administrative remedies as required under

---

[1] Defendant Aaron Pouncy is the CEO of CWF; defendant Carmen Columbo identified as the president of CWF; defendant Dick Voss is identified as food services director for CWF; and defendant Dan Gryzinski is identified as the MCR–Stillwater kitchen supervisor for CWF. The defendants are sued in an official capacity for injunctive and declaratory relief and are sued in an individual capacity for money damages.

the Prisoner Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA") and DOC grievance policy Sec. 303.100.[2] Defendants also contend that the complaint fails to state a claim upon which relief can be granted under circumstances in which the plaintiff has not alleged actual consumption of non-Halal food. Finally, defendants assert that the DOC has now implemented directives regarding Halal meals to address issues presented by the plaintiff in this matter. Plaintiff has submitted objections to defendants' motion for judgment on the pleadings or summary judgment, along with affidavits, in response to defendants' motion. For reasons discussed below, the court recommends that the defendants' motion for summary judgment be granted and that the complaint in this action be dismissed with prejudice.

## DISCUSSION

**Background and Fact Allegations**

Plaintiff Abdul Jabbar converted to Islam in 1996 while incarcerated at the Minnesota Correctional Facility at St. Cloud. He is a strict adherent to the religion and the practices of his faith, including maintaining a Halal diet.[3] In accordance with the strictures of a Halal diet, permissible foods include fruit and vegetables, meat from animals that chew their cud and have cloven hooves, e.g. cows and sheep, certain poultry and fish having fins and scales, and the food must be prepared in a prescribed manner and in untainted containers.[4] In addition, meat must be from animals that were slaughtered in the Name of Allah and vegetables have been

---

[2] Affidavit of Aaron Pouncy, Ex. 3 [Docket No. 21].

[3] Compl., ¶¶ 18-19.

[4] Id., ¶¶ 23-24.

grown in the Name of Allah and without the use of animal fertilizers.[5]

Plaintiff alleges that in August 2011, during Ramadan, he and other Muslim prisoners would go the kitchen at MCF–Stillwater to prepare breakfast and evening meals that would be in compliance with Islamic dietary requirements.[6] When preparing breakfast bags on August 6, 2013, the plaintiff read an ingredients label on a box of Danish indicating that the food item was made with vanilla extract containing 14% alcohol, a prohibited substance.[7] Mr. Jabbar and another Muslim prisoner, Hanifi Jihad, first went to speak with CWF kitchen supervisor Dan Gryzinski about the discovery and thereafter had a meeting with program director Regina Stepney, Associate Warden Mary McComb, and Mr. Gryzinski to discuss the strict prohibition of alcohol from their Islamic diet.[8] At this meeting defendant Gryzinski laughed and stated, "there's alcohol in the air, what do ya'll do about that?"[9] Ms. McComb thereafter told Mr. Gryzinski to order some kosher muffin mix for Ramadan breakfast bags, prompting Gryzinski to engage in some paper pushing and yelling.[10] Ms. McComb subsequently apologized to the plaintiff for Gryzinski's behavior and Mr. Jabbar indicated that he did not feel safe around him.[11]

In another incident a few days later, on August 12, 2011, plaintiff Jabbar was

---

[5] Compl., ¶ 25.

[6] Aff. of Abdul Jabbar, ¶ 2 [Docket No. 4].

[7] Id., ¶ 3.

[8] Id., ¶ 7.

[9] Id..

[10] Id., ¶ 8.

[11] Id., ¶ 9.

3

preparing evening meal trays for Ramadan when he noticed that turkey and beef sausages for the meals were made with pork casings, also a food substance prohibited by Islamic law.[12] Prison administration was again informed and Ms. McComb and Ms. Stepney promptly confronted Mr. Gryzinski on the matter.[13] Ms. McComb thereafter provided the plaintiff and Hanifi Jihad with a copy of the five-week menu on which the prisoners could mark off menu items they felt were questionable for Muslim consumption.[14] On the following day CWF food services director Dick Voss spoke with the plaintiff while breakfast bags were being prepared in the dining hall. Mr. Jabbar tried to explain his belief that Mr. Gryzinski was intentionally providing food containing alcohol and pork, was exhibiting bad temper and mocking Islamic practices, and was causing Jabbar to fear he would be assaulted, based upon Gryzinski's cursing and yelling. Mr. Voss responded with the statement, "he was not going to attack you–you and Jihad just need to have a pork chop sandwich and you'll be all right." Mr. Jabbar felt Voss' statement was disrespectful to him and his religion.[15]

Plaintiff Jabbar sent a grievance letter to CWF CEO Aaron Pouncy on October 30, 2011, generally objecting to Mr. Gryzinksi's offending conduct, and further indicating that Gryzinski had shorted the Muslim prisoners on lamb meat that was meant to be used for a special Halal meal.[16] Pouncy responded to the letter by correspondence dated November 9, 2011, but

---

[12] Aff. of Abdul Jabbar, ¶ 10.

[13] Id., ¶ 11.

[14] Id., ¶ 12, Aff. Ex.

[15] Id., ¶ 13.

[16] Aff. of Aaron Pouncy, Ex. 1.

4

the return letter was mistakenly sent to a different inmate and was not received by Mr. Jabbar.[17] Plaintiff alleges that he also sent grievances to CWF president Carmen Columbo and food services director Voss.[18]

**Summary Judgment**

Defendants move for judgment on the pleadings or summary judgment on grounds that the plaintiff has failed to exhaust administrative remedies as required under the Prisoner Litigation Reform Act of 1997, 42 U.S.C. § 1997e ("PLRA"). Defendants further contend that dismissal of the complaint as frivolous under the PLRA would be proper. Summary judgment is appropriate where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The moving party has the initial responsibility of demonstrating that there is no genuine issue of material fact to be decided. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). When a motion for summary judgment has been made and supported by the pleadings and affidavits as provided in Rule 56(c), the burden shifts to the party opposing the motion to put forth evidence demonstrating that a trial is required because a disputed issue of material fact exists. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). In satisfying this burden, however, the opposing party must do more than simply establish doubt as to the material facts. The party opposing summary judgment may not "rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Matsushita. at 586, n.11; Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995). Fed. R. Civ. P. 56

---

[17] Aff. of Aaron Pouncy, Ex. 2. Second Aff. of Abdul Jabbar [Docket No. 26].

[18] Pl. Mem. in Opposition to the Def. Mot., page 7 [Docket No. 25].

(e). Pro se pleadings should be given a liberal construction and held to a less stringent standard than attorney drafted pleadings, Haines v. Kerner, 404 U.S. 519, 520-21 (1972). However, the plaintiff still must present evidence to defeat a properly supported summary judgment motion and may not rely upon conclusory allegations and unsupported assertions. Dunavant v. Moore, 907 F.2d 77, 80 (8th Cir. 1990).

**Exhaustion**

Defendants argue that Mr. Jabbar has failed to exhaust administrative remedies in regards to his claims in this case because he has not complied with express written DOC policy for submission of grievances and appeals of adverse responses to grievances. The plaintiff insists he is not bound by the DOC policy because CWF is a private entity that is separate from the DOC. He contends that is not asserting claims against the DOC or its employees, and he sent letters to CWF officers which are sufficient to satisfy the exhaustion requirement.

The PLRA at § 1997e(c) bars suit unless the prisoner has presented his grievance in accordance with the procedural rules for administrative appeals as established by the state. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378 (2006). Proper exhaustion is defined by the prison's requirements rather than the PLRA, Jones v. Bock, 549 U.S. 199, 127 S.Ct. 910, 923 (2007), and requires "compliance with an agency's deadlines and other critical procedural rules." Woodford, 126 S.Ct. at 2386. In Woodford the Court stated:

> The benefits of exhaustion can be realized only if the prison grievance system is given a fair opportunity to consider the grievance. The prison grievance system will not have such an opportunity unless the grievant complies with the system's critical procedural rules. A prisoner who does not want to participate in the prison grievance system will have little incentive to comply with the system's procedural rules unless noncompliance carries a sanction . . . For example, a prisoner wishing to bypass available

6

> administrative remedies could simply file a late grievance without
> providing any reason for failing to file on time. If the prison then
> rejects the grievance as untimely, the prisoner could proceed
> directly to federal court. And acceptance of the late grievance
> would not thwart the prisoner's wish to bypass the administrative
> process; the prisoner could easily achieve this by violating other
> procedural rules until the prison administration has no alternative
> but to dismiss the grievance on procedural grounds. We are
> confident that the PLRA did not create such a toothless scheme.

Vartinelli v. Cady, 2009 WL 706221 (E.D. Mich.) (quoting Woodford and dismissing a prisoner's § 1983 claims against a private company that contracted to provide medical services to prisoners for failure to properly present his grievance pursuant to the state administrative appeal system).

It is not disputed in this case that plaintiff Abdul Jabbar did not follow the grievance appeal procedures as provided by Minnesota DOC Policy Directive 303.100. Rather, it is the prisoner's contention that he satisfied his grievance obligation by way of letters to Voss, Colombo, and Pouncy, and it was CWF that failed to respond in compliance with its grievance procedures.[19] Jabbar argues that is was CWF and not MN DOC that violated his constitutional and statutory rights and therefore he is not required to follow DOC grievance policy.[19]

42 U.S.C. § 1997e (a) states that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." Defendants direct the court to Minnesota DOC Policy Directive 303.100[20] which requires prisoner compliance with grievance procedures whereby the offender must first seek informal resolution by kite communication with facility staff. If the issue is not

---

[19] Pl. Mem. in Opposition to the Def. Mot., pp. 5-7.

[19] Id.

[20] Aff. of Aaron Pouncy, Ex. 3.

resolved informally through kites the offender must obtain and submit a formal Offender Grievance form to the facility grievance coordinator who then logs the grievance into a database and sends notice to the prisoner that the grievance and supporting evidence have been logged. Following an investigation by appropriate staff, the grievance and investigation results are submitted to the warden or a designee. Within 20 days after the grievance is first logged the offender is to be notified of a decision either dismissing or affirming the grievance. The grievance may also be affirmed with modifications. If the offender does not receive a decision within either 20 days of the grievance, or notice of a 20-day extension, the grievance may be considered dismissed and immediate appeal may be taken. A decision that is unsatisfactory to the prisoner may be again appealed within 15 working days by submission of a Grievance Appeal form to the central office grievance appeal coordinator which is then logged, investigated, and submitted to the appropriate assistant or deputy assistant commissioner for decision within 20 days of being logged into the grievance database, or within 20 days of an extension. If no timely response is provided, an appeal may be brought to the Commissioner of Corrections. An appeal decision by an assistant or deputy commission or the commissioner is not subject to further appeal.

  Although plaintiff Abdul Jabber arguably complied with the initial Policy 303.100 requirement for obtaining informal resolution by kite communication, he did not thereafter proceed on any formal appeal required under Policy 303.100, whether such appeal would have been in response to an adverse decision or the absence of any response at all. The court finds no legal support for distinguishing the actions of a private contractor with respect to grievance procedures and even to the extent that the plaintiff may have appropriately submitted
8

grievance letters to CWF employees, he did not thereafter proceed properly with appeals which the policy required to be made to DOC staff in the event of either an adverse response or a failure to respond. In essence, plaintiff contends that he substantially complied and satisfied the exhaustion requirement by submitting his grievance to the staff personnel who were best able to address the issue. This argument is without merit. "Proper exhaustion 'means using *all steps that the agency holds out, and doing so properly.'*" Roth v. Larson, 2008 WL 4527831 at *16 (D. Minn.) (quoting Woodford v. Ngo, 548 U.S. 81, 90). Plaintiff Abdul Jabbar has not properly exhausted administrative remedies as to his claims in this case and his complaint should be dismissed for that reason.

**Claims for Relief**

In addition to a claim for compensatory and general damages, plaintiff Abdul Jabbar specifically seeks declaratory and injunctive relief requiring defendants to provide him with a nutritionally sufficient, non-pork, non-alcoholic, and un-contaminated Halal diet during Ramadan.[21] The asserted causes of action are violation of the Religious Land Use and Institutionalized Persons Act of 2000, 42 U.S.C. § 2000cc, et seq., and violation of his right to free exercise of religion under the First and Fourteenth Amendments.[22] The complaint was filed on September 21, 2012. In support of his complaint the plaintiff also filed his own affidavit and he further filed the affidavit of another Muslim prisoner, Hanifi Jihad.[23] In Mr. Jihad's affidavit

---

[21] Compl., pp. 11-12, ¶¶ 1-5.

[22] Id., pp. 9-11, ¶¶ 43-49.

[23] Aff. of Abdul Jabbar [Docket No. 4] and Aff. of Hanifi Jihad [Docket No. 5]. These affidavits essentially corroborate one another as to facts relating to the discovery of non-Halal ingredients in food being prepared by the prisoners, and the subsequent meetings with CWF defendants and DOC staff.

9

the affiant acknowledged that he had a pending civil rights action against various DOC personnel, Minnesota District Court Civil No. 09-1604 SRN/LIB, but asserted that the case was irrelevant to grievances with CWF.[24]  Defendants have filed the Settlement Agreement and Release of Claims dated September 30, 2012, with a Halal Certification from Islamic Services of America dated December 14, 2012,[25] in reply to plaintiff's opposition to dismissal of this case. Defendants assert that in consideration of the settlement and the Halal certification in the <u>Jihad</u> action, the present case for injunctive and declaratory relief is properly dismissed at frivolous. Nonetheless, it is the court's determination herein that this action should be dismissed for failure to exhaust administrative remedies and the court therefore declines to reach the merits of the claims.

## RECOMMENDATION

Based upon the foregoing discussion and conclusions, the magistrate judge **recommends** that defendants' motion for summary judgment [Docket No. 19] be **granted**, and plaintiff's complaint be dismissed with prejudice.[26]

Dated:     March 4, 2013

---

[24] Aff. of Jihad, ¶ 19.  The Jihad matter was dismissed by Order dated October 3, 2011, pursuant to settlement and stipulation.  Hanifi Jihad subsequent moved to enforce the settlement in July 2012, asserting that DOC was failing to abide by its agreement to provide Halal-certified meals.  The magistrate judge issued a Report and Recommendation that the motion be denied based upon lack of jurisdiction over the dismissed case.  Plaintiff filed objections to the R&R and the matter remains pending before the district court.  Although the Jihad case includes claims relating the Halal diet, it also contains claims not presented in the present action.

[25] Aff. of Aaron Pouncy, Ex. 1 and Ex. 2 [Docket No. 32].

[26] Pursuant to Minnesota DOC Policy Directive 303.100, Sec. B.1., a grievance appeal must be submitted within 15 working days of the response.  The time for any appeal in this instance has long expired.  Aff. of Aaron Pouncy, Ex. 3.

    s/Arthur J. Boylan
Arthur J. Boylan
United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before March 19, 2013.